Davis vs. The Town of Scott.

DAVIS VS. THE TOWN OF SCOTT.

*February 1 — February 19, 1884.*

TOWNS: *Liability for support of nonresident pauper: Express contract not essential.*

The town in which a pauper happens to be, destitute, in absolute want, and without any means of support, is primarily liable for his support, when notice is properly brought home to the supervisors. This liability is not defeated by a failure of the supervisors to make a contract for such support, nor by the fact that the town wherein such pauper has a legal settlement is ultimately liable therefor.

APPEAL from the Circuit Court for *Vernon* County.

The case is thus stated by Mr. Justice CASSODAY:

" The plaintiff, who was, during the times in question, a resident in the defendant town, brings this action for the support and maintenance of his daughter,— a divorced woman in poor health and destitute of all means of support,— and her children, from January 24, 1875, to August 15, 1875, and from October 7, 1877, to March 25, 1879. The complaint alleged, in effect, among other things, that the said daughter and children were, during the times mentioned, sick, disabled, and without means of support, and wholly dependent upon others, and had their residence and lawful settlement in the defendant town, and that it was the duty of the defendant to support them; that the plaintiff notified the defendant and the board of supervisors of the town, January 24, 1875, and frequently thereafter, of the condition of said paupers, and that the supervisors during all the time knew their condition and that they were at the plaintiff's house and supported by him with the expectation of receiving pay therefor from the defendant; that the defendant was indebted to the plaintiff therefor in the sum of $525; that the plaintiff had presented his account and statement of his claim to and filed the same with the town clerk,

Davis vs. The Town of Scott.

within the time prescribed by law, and prior to the annual town meeting, and requested the board of supervisors of the town to audit and allow the same, but that they wholly refused, and refused to pay the same after it had been duly demanded, and that more than ten days had elapsed after the annual town meeting before the commencement of this action.   The answer was a general denial.

" On the trial the plaintiff gave evidence tending to prove the substance of the allegations of his complaint.   He gave evidence tending to prove that he notified the chairman of the board of supervisors of the defendant as early as April 26, 1875, of the condition of these paupers, and that he was supporting them at his house and should expect the town to pay him; that he talked with the supervisors frequently about it; that they claimed the town of Clayton was liable, and frequently stated that they would notify the supervisors of that town; that they did so notify them August 17, 1875; that the plaintiff had received $20 from the town of Clayton, August 25, 1875; that on December 24, 1875, the town of Clayton agreed in writing to pay the plaintiff a certain sum per week for the support of the paupers for an indefinite time; and that, under it, he did support them from that time to October 7, 1877, but that he had received no pay from any source for the time in question; that the plaintiff was in very poor health and not of sufficient ability to support the paupers without compensation; and that he had received aid and assistance with the expectation on the part of those rendering such assistance that they would be remunerated when the plaintiff received such compensation from the town.

" At the close of the plaintiff's testimony the defendant moved for a nonsuit on the grounds, among others, (1) that if any town was liable it was the town of Clayton; (2) that the plaintiff never had any contract or agreement with the defendant town, or any of its officers, for the care and sup-

Davis vs. The Town of Scott.

port of said paupers. And thereupon the court sustained the motion on the ground that the defendant town was not liable to a person who had voluntarily taken care of the paupers without a contract; and rendered judgment of nonsuit, dismissing the complaint, and for $119.07 costs and disbursements. From that judgment the plaintiff appealed. For the history of this case see 51 Wis., 185; 54 Wis., 499."

For the appellant there was a brief by *Thomas & Fuller*, and oral argument by *Mr. Thomas*.

For the respondent there was a brief by *Brooks & Dutcher*, and oral argument by *Mr. Brooks*.

CASSODAY, J. The evidence tended to show that the plaintiff was not of sufficient ability to support the paupers, within the meaning of sec. 1502, R. S. The plaintiff resided in the defendant town. His divorced daughter came to his house with her children from the town of Clayton, where they had previously been living with her divorced husband. He notified the chairman of the defendant town of their condition. After that notice the plaintiff supported them for some time at least. Is he entitled to compensation from the defendant town for such support without any express contract or agreement?

The supervisors in the town were expressly charged with the oversight and care of all poor persons in the town so long as they remained a town charge, and were expressly required to see that such poor persons were properly relieved and taken care of in the manner required by the statute. Sec. 1501, R. S. When any minor has become, or is likely to become, chargeable to any town, the supervisors thereof may bind such minor as an apprentice. Sec. 1511, R. S. When any person not a resident nor having a legal settlement therein, and having no means of support, is taken sick, lame, or otherwise disabled, in any town, the supervisors are expressly required to provide such assistance as they may

deem just and necessary, and if he shall die they shall give him a decent burial, and the expense thereof is made payable out of the town treasury, and is made a charge against the county and in favor of the town. Sec. 1512. If any poor person becomes a charge to any town in which he has no legal settlement, the town in which he has such settlement is liable for his support to the town giving it, on receiving notice from the supervisors of the town furnishing such relief or support. Sec. 1513, R. S.

It is very evident from the general scope and purpose of these different sections of the statute that the legislature never intended that the supervisors of any town should knowingly allow any sick, lame, or otherwise disabled person, destitute of all means of support, to suffer for want of support, or to remain unburied in case of death, merely because such person had no legal settlement in the town, nor because the officers of such town had neglected their duty or failed to make a contract therefor in advance. Such a purpose would be contrary to the legislative policy of the state respecting weak, unfortunate, and helpless children or citizens. In the language of the present chief justice, in *Muppes v. Iowa Co.*, 47 Wis., 32: "The law is founded upon the humane idea that a poor person has a right to live; and that when one, through age, disease, or misfortune, is unable to procure the means of bodily subsistence, he shall not die from want or exposure, but the property of the town in which he resides shall be chargeable with the expense of his maintenance." The facts of that case distinguish it from this, but the language quoted is peculiarly applicable. Of course, the town where the pauper has a legal settlement is ultimately liable; but the town in which such person happens to be, destitute, and in absolute want, and without any means of support, with the knowledge of its supervisors, is also primarily liable. *McCaffrey v. Town of Shields*, 54 Wis., 648. The facts in that case clearly distinguish it from this.

The claim there was not made against the town of Montello, in which the pauper was at the time the assistance was afforded.   If it had been it would have been more like the question here presented.   The pauper in that case had not resided in the defendant town long enough to acquire a legal settlement, and she had no legal settlement in any town.   The remarks of Mr. Justice Lyon in that case, to the effect that the town of Shields could not be held liable to the plaintiff, who lived and supported the pauper in the town of Montello, unless the supervisors of the town of Shields, or at least two of them, requested the plaintiff to board and lodge the pauper, have reference to the facts of that particular case, and not to a case like this, in which the duty to support was suggested, but not decided.

In *Town of Dakota v. Town of Winneconne*, 55 Wis., 526, it was said that, " assuming that the pauper had a legal settlement in the defendant town, then it could not, by neglecting its own legal duty, compel the plaintiff town to make the expenditures in question, and still be in a position to defeat a recovery upon the mere technical ground that the expenditures were not first contracted for nor authorized by the full board, and then not afterwards audited nor directed to be paid by the full board.   The plaintiff town having given the defendant town the requisite notice to take charge of the pauper, the liability of the latter became fixed."   So here, if the plaintiff was not of sufficient ability to support the paupers, and assuming, as the evidence tends to show, that he gave the town the requisite notice to take charge of the paupers, then thereby the liability of the latter became fixed by statute.   *Town of Westfield v. Sauk Co.*, 18 Wis., 624.   The liability being thus fixed and imposed by statute, cannot be rendered inoperative, nor defeated by showing that the supervisors neglected their duty and failed to make any contract.   Nor is the primary duty and liability of the defendant town any the less stringent and absolute by reason

of the town of Clayton being ultimately liable. We do not think the town is liable until notice is brought home to the supervisors, or some of them. Assuming that such notice was given, that the woman and her children were in a condition to be a proper town charge, and that her father was not of sufficient ability to support them, then the defendant is liable to the plaintiff for just compensation for whatever time he supported such paupers after such notice, and for which he has received no compensation. Of course, these assumptions and the amount of liability are all questions of fact to be determined upon the trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.