PATRICK, Appellant, vs. TOWN OF BALDWIN, Respondent.

*February 7 — February 26, 1901.*

(1, 2) *Justices' courts: Notice of appeal: Towns.*   (3–5) *Poor laws: Sup-
port of pauper by private person: Liability of municipality: Im-
plied contract.*

1. Mistakes in a notice of appeal from a judgment rendered in justice's
   court do not render such notice ineffective if it contains enough
   to identify, with reasonable certainty, the judgment, the parties,
   and the court, and to show that it was made by the party appeal-
   ing, personally, or by some person or persons duly authorized, in
   behalf of such party.
2. A notice of appeal from a judgment rendered in justice's court
   against a town, signed by three persons with the word "Super-
   visor" under the last signature, the signatures and the official des-
   ignation being so located that if the plural number were used

Patrick vs. Town of Baldwin.

instead of the singular it would clearly indicate that all signed officially, shows with reasonable certainly that it was so signed, where there is no indication in the notice to the contrary.

3. There is no legal obligation resting on a municipal corporation to maintain or relieve poor persons in the absence of a statute creating one, and the court has no power, upon the ground of moral obligations or the equities of any given case, to hold such a corporation liable to a private person who may have relieved or supported a poor person.

4. Where the law imposes on a municipality the duty of maintaining poor persons, and designates officers thereof to act in its behalf in the performance of such duty, their mere neglect will not operate as an implied request to a private party to supply a needy person's wants, upon which such party can act and hold the municipality liable as upon an implied contract.

5. The statute requiring each town in this state to support poor persons in certain cases, and the supervisors thereof to see that such support is furnished, does not permit a private party to aid or relieve such a person at the expense of the town without a contract to that effect, made between him and such supervisors or a majority thereof.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

The cause was commenced against the defendant town in justice's court, wherein such proceedings were had that judgment was duly rendered in plaintiff's favor for $101 damages and $20.91 costs, for services rendered as a physician in attending Richard Bruaas, a poor person having a legal settlement in said town, without any direction or employment by the supervisors of said town, or either of them, and, so far as the complaint states the facts, without any notice to such supervisors or either of them, or any knowledge on their part of the rendition of such services or the necessity therefor.

Within the time required by law an appeal from such judgment was attempted to be taken by the supervisors of the town to the circuit court. Each of such supervisors made

an affidavit in due form of law for the purposes of such appeal, in which he testified that he made such affidavit in his official capacity. Such affidavits, with a paper intended as a notice of appeal in the action, were duly served on the justice. Such notice of appeal was signed as follows: "P. C. Finvold, Wm. Ferg, Jacob De Jong, Supervisor of the *Town of Baldwin*, Defendant." Such notice and affidavits were recognized by the justice to be in due form of law, and sufficient to perfect an appeal from said judgment on the part of defendant, and the papers were accordingly certified to the circuit court.

When the cause came on for trial in such court, plaintiff's attorneys moved for an order dismissing the appeal because the notice thereof was insufficient, which motion was denied, due exception being taken to the court's ruling. In due time objection was made to the reception of any evidence because the complaint failed to state facts sufficient to constitute a cause of action against defendant. The objection was sustained. Plaintiff's counsel then made application for leave to amend the complaint by alleging that on December 23, 1898, plaintiff caused the chairman of the board of supervisors of the town to be notified of the necessity for immediate medical services to be rendered to Richard Bruaas and of the fact of his being a proper subject for relief by the town, as a pauper. The application was denied. Judgment was thereupon rendered dismissing the action, with costs. Plaintiff's counsel excepted to each of the court's adverse rulings, including that on a motion made for a new trial.

For the appellant there were briefs by *E. B. Kinney* and *A. J Kinney*, and oral argument by *A. J. Kinney*.

*James A. Frear*, for the respondent.

MARSHALL, J.   The notice of appeal was sufficient. Strict accuracy is by no means necessary in such a paper in order

to confer jurisdiction upon the appellate court. Mistakes, however numerous, are immaterial if the notice yet contains enough to fairly identify the judgment, the parties, and the court, and to show that it was made by the party appealing, or some one authorized to do so, which authority need not expressly appear, it being sufficient if it be fairly inferable from the language of the notice and the manner in which it is signed. The law in that regard is too well settled to need any citation of authority to support it. The alleged defect in the notice is that it was not signed by the town of *Baldwin*, using the name of the town, or showing that some person or persons acted in the matter as agent or agents for the town, having authority so to do. A corporation must of necessity act by an agent, and that agent need not necessarily be an officer of the corporation, nor need any proof of the agency accompany the notice. If there is enough in a notice of appeal to indicate that it was made by a person assuming to act as agent of the appellant, though the agent in signing used only his name as such, his authority will be presumed till the contrary is shown. *Benjamin v. Houston*, 24 Wis. 309. The notice in question was signed by three persons, with the word " Supervisor " under the last signature, indicating that at least such signer acted in his official capacity for the town. We think it is fairly inferable that all the signers acted officially, and that by mistake the singular number was used instead of plural in specifying the official character.

The contention is made that, inasmuch as by sec. 1499, Stats. 1898, the defendant was required to relieve Bruaas, no notice of his necessities to its supervisors was necessary to create a legal liability to one who voluntarily, from motives of humanity, administered to his wants, and that since by sec. 1501 such supervisors were required to see that he was properly relieved, neglect on their part, after receiving notice from plaintiff of circumstances calling for action to that

Patrick vs. Town of Baldwin.

end, was tantamount to a request to plaintiff to perform the service required. To support those propositions, *Mappes v. Iowa Co.* 47 Wis. 31, is cited. That, with what is said in *Davis v. Scott*, 59 Wis. 604, supports both propositions. If they declare the law correctly, the judgment appealed from is wrong. In the first case mentioned the claimant supported an aged woman, who was a pauper, without notifying the municipal officers of the facts, and without knowledge on his part that such person's relatives had failed to comply with an order made according to law requiring them to support her, rendering it necessary for public relief to be furnished, and without the claimant knowing that she was a pauper. The court held that such ignorance excused the claimant for not giving notice of the situation to the municipal authorities; that he was entitled to recover upon the ground of the legal obligation alone; that in view of such obligation the only thing that could preclude the claimant from recovering would be negligence on his part in failing to notify the proper officers so as to give them an opportunity to perform their duty in the matter, and that the claimant was not chargeable with such negligence, since he did not know that the person relieved was a pauper. No authority was cited to support the decision. *Meyer v. Prairie du Chien*, 9 Wis. 233, was referred to on the general subject of the legal duty of a town to support paupers having a legal settlement therein. Such case does not refer even remotely to the principle upon which the *Mappes Case* turned, it being held in effect that a contract between the town authorities and the party furnishing the relief was necessary to give the latter a legal claim against the former. There was a recovery in the court below, and no bill of exceptions on the appeal. In that situation this court said that it would be presumed that a proper contract was made entitling the claimant to recover. The rule of the *Mappes Case*, to its full extent, has never been followed in this court, or at all

here, except in *Davis v. Scott.* In several cases it has been in effect overruled by holdings that a claim against a municipality for the relief of a pauper must be based on an express or implied contract, actually made between the claimant and the proper officials.

Cases exist holding that a public corporation may be held liable without even notice to its officers having authority to act in its behalf, of the necessity for relief to be given a pauper, but they are based on statutes to that effect, as, for instance, by sec. 12, ch. 16, R. S. Vt. 1840, in force when *Charlestown v. Lunenburgh,* 23 Vt. 525, was decided, it is provided that in certain emergencies a person furnishing relief to a pauper, until the lapse of a reasonable time for notifying the proper public officers of such pauper's needs, can recover therefor of the municipality in which such relief is furnished, and that if, after such notice, such officers neglect to perform their duty, he can continue to furnish such relief and look to such municipality for his pay. We have no such statute. There is much judicial authority to the effect that if one furnish necessary relief to a poor person, after notice to the public officers of the pauper's needs and neglect on their part to perform their duty, he may recover therefor as on an implied contract. Most of such authority, however, is based on statutes, as, for examples, sec. 18, ch. 46, R. S. Mass. 1836, in force when *Smith v. Colerain,* 9 Met. 492, was decided, provides that, " every town shall be held to pay any expense, which shall be necessarily incurred, for the relief of a pauper, by any person who is not liable by law for his support, after notice and request made to the overseers of the said town, and until provision shall be made by them; " sec. 4, part 1, ch. 2, tit. 15, Gen. Stats. Conn. 1875, in force when *Wile v. Southbury,* 43 Conn. 53, was decided, was to the effect that, ' any person relieving a poor person after notice to the proper public officers of the needs of such poor person and a neglect of such

Patrick vs. Town of Baldwin.

officers to perform the duty, may recover therefor upon an implied contract;' sec. 48, ch. 32, R. S. Me. 1841, in force when *Perley v. Oldtown*, 49 Me. 31, was decided, is to the same effect; but in *Beetham v. Lincoln*, 16 Me. 137, it was decided that in the absence of a statute making it the duty of a municipality to relieve a poor person standing in need thereof, and neglect of its proper officers to attend to the matter, after receiving notice of such need, sufficient to constitute an implied request by such officers to another to furnish relief, such circumstances do not create contract relations between such municipality and such other upon which the latter can recover of the former. *Seagraves v. Alton*, 13 Ill. 366, is to the opposite effect, but it is not a well-considered case, as is evidenced by the fact that none of the authorities cited supports the conclusion reached. It holds that the legal obligation of a municipality to support a poor person, and neglect of its officers to act in its behalf, is sufficient to warrant the court in inferring a promise by such officers, to one who stands in place of the municipality and prevents the suffering that would otherwise result from the neglect of its agents, to compensate him therefor. The case went to the full extent of holding that such a promise will be inferred in certain emergency cases even in the absence of any neglect on the part of municipal officers. The decision followed closely the lines of those cases we have referred to that are based on statutes, seemingly ignoring the rule often laid down that, while there is a strong moral obligation resting upon organized society to relieve all poor persons in its midst standing in need thereof, there is no legal obligation to do so in the absence of a statute creating it, and that the courts cannot go further than the legislative will has been expressed.

To what extent, under what circumstances, at what place, and by what agencies poor persons shall be relieved at the expense of the public, are all purely legislative questions.

Patrick vs. Town of Baldwin.

When the legislature has gone no further than to create a
legal obligation to support poor persons, and to designate
municipal agents to incur the necessary obligations to that
end, no such obligation can exist without some clearly ex-
pressed municipal consent given by such agents. In short,
where the statute contemplates that all liabilities for the
support of the poor shall rest on contract, that is the exclu-
sive way of incurring them, and a meeting of minds is just
as essential to such a contract as to any other. The doc-
trine thus stated is generally recognized as controlling. In
*Overseers of the Poor of North Whitehall v. Overseers of the
Poor of South Whitehall*, 3 Serg. & R. 117, often cited on
the subject discussed, it was said, "Whatever may be the
duty of individuals, from religious or charitable considera-
tions, it is certain the public is bound by no moral obliga-
tion to support the poor of the community. That duty,
being legal and of positive institution, is to be carried no
further than the express provisions of the poor laws." In
*Smith v. Colerain*, 9 Met. 432, the situation was this: The
statute expressly made a town liable on an implied contract
in certain but not in all cases of a person furnishing neces-
sary relief to a pauper whom such town was legally bound
to support. Relief was furnished to such a person by a
private party, the officers of the town having refused to do
so. The person relieved was not at the time located where
the law required as a condition of an implied contract to pay
for such relief, when furnished by a private party, though
he was where the overseers of the poor placed him and
might have continued to support him. In deciding the case
Chief Justice SHAW said: "There was no express undertak-
ing to pay the plaintiff; and whether a contract could be
implied depends upon the statute liability . . . It has
been too often decided to be now questioned, that the liabil-
ity of towns to support poor persons is founded upon and
limited by statute, and is not to be enlarged or modified by
any supposed moral obligation."

In *McCaffrey v. Shields*, 54 Wis. 645, it was said that, "the defendant town cannot be held liable . . . unless its supervisors, or at least two of them, requested" the service to be performed. The court did not feel called upon to overrule *Mappes v. Iowa Co.*, because the facts in the two cases were different, though it seems that the principle involved, of whether a contract is necessary upon which to found a legal liability against a town for the relief of a poor person, was decided differently in the one case than in the other.

In *Dakota v. Winneconne*, 55 Wis. 522, it was held that a contract is necessary to a liability of the kind in question, though it is not necessary that the supervisors act in a body in making it; that if one supervisor request the service to be rendered, with the knowledge and tacit consent of another, and the person furnishing the relief rely upon the conduct of the two as a joint request, it is within reason to say that there is a meeting of minds, and a contract made.

In *Davis v. Scott*, 59 Wis. 604, the court held squarely that the liability of a town to compensate a person furnishing support to a proper subject for relief as a poor person, is fixed by notice to the supervisors to take charge of such subject, and their neglect to do so. It was said that the case was distinguishable from *McCaffrey v. Shields*. That is true as to the facts, but why it is as to the principle of whether some clear indication of a request to furnish relief is necessary to a contract obligation of the town to pay the person performing that service, is not perceived. It seems that an error was committed in that case. Secs. 1513, 1514, R. S. 1878, not now in force, were in substance as follows: 'If any poor person shall become a charge for support to a town in which he has no legal settlement, any town in this state in which such person has such settlement shall be liable over to the former upon condition of its supervisors giving to at least one of the latter's supervisors notice of

the facts and requiring them to take charge of such person. If he shall not·be so taken charge of within thirty days after such notice, and all expenses be paid up to such taking, the delinquent town shall be liable to the other for such expenses and all others incurred while such person remains a public charge.' *Dakota v. Winneconne, supra,* arose under such statutes. The defense was made that the plaintiff was not entitled to recover because it did not, acting by its full board of supervisors, contract for the relief furnished and audit the expense thereof. This court, after deciding that a request by two of the supervisors of the town to furnish the relief satisfied all the requisites of a contract under the previous decisions of the court, said that the town ultimately liable could not be heard to complain of any irregularity in regard to making the contract and auditing the claims by the town primarily liable, since the person relieved was a legitimate charge upon the former, and notice to its supervisors of the facts, and a request of them to take charge of such person, was all that was necessary to fix its liability to the plaintiff town. This language was used: "The plaintiff town having given the defendant town the requisite notice to take charge of the pauper, the liability of the latter became fixed." 'It could not, by neglecting its own legal duty, compel the plaintiff to make the expenditure in question, and then defeat its claim therefor because such expenditure was not made by authority of the full board.' The court properly said, on the facts of that case, that notice to the town in which the pauper had a legal settlement fixed its liability to the town primarily liable for the relief, because such was the express mandate of the statute. In *Davis v. Scott* the liability was claimed under secs. 1499, 1501. Only that part of *Dakota v. Winneconne* holding that a contract between the supervisors of the plaintiff and the person furnishing the relief was requisite to its liability therefor to such person, applied. The idea that the part holding that notice

Patrick vs. Town of Baldwin.

to the town responsible over fixed its liability to the town primarily liable, applied, manifestly was a mistake. For that reason the case cannot be considered as authority ruling the case before us.

In *Jones v. Lind,* 79 Wis. 64, there was proof of a general request by the chairman of the board of supervisors to furnish relief and make monthly reports. Relief was furnished on the faith of such request, reports thereof were made, and bills therefor paid, up to the expiration of such chairman's term of office. He and his associate supervisors supposed that the arrangement was to end with their term of office. He testified to that as a conclusion, though there was nothing in what was said between him and the claimant indicating that the contract was not to continue so long as necessary. Such claimant supposed it was not to terminate without express notice to that effect, if the necessity continued. He was never notified to discontinue his service. The need therefor remained unchanged, and the person served continued to be a proper town charge. The action was for services rendered after the term of office of the supervisors employing the claimant expired. It was held that he was not entitled to recover, the court saying: "As a town can only be chargeable for services rendered by virtue of some contract therefor, we think the circuit court was clearly justified in holding that plaintiff had no cause of action."

In *Beach v. Neenah,* 90 Wis. 623, there was notice to the chairman of the town and a promise by him that the destitute persons should have whatever they needed; and it was said that the evidence was sufficient to show that the supervisors of the town consented that the person giving notice, and to whom the declaration was made, should care for such persons at the expense of the town until they were otherwise cared for.

It is believed that the law, that an obligation against a

town for services rendered in relieving a poor person who is entitled by law to be so relieved can only be incurred in the manner indicated in the statute, was recognized and correctly declared in *Meyer v. Prairie du Chien*, 9 Wis. 233; *McCaffrey v. Shields*, 54 Wis. 645; *Dakota v. Winneconne*, 55 Wis. 522; *Jones v. Lind*, 79 Wis. 64; *Beach v. Neenah*, 90 Wis. 623; and *Putney Bros. Co. v. Milwaukee Co.* 108 Wis. 554; that the agents empowered to act for the municipality in such matters must, either by express contract or by some act or acts from which a contract can be reasonably inferred, bind such municipality, or it cannot be bound at all. Mere passive neglect is not sufficient.

The statute, as has been said, does not indicate that the supervisors must act in a body in contracting for the relief of a poor person. The nature of the duty in such cases is not consistent with such a requirement. The statute must have a reasonable, sensible construction, in view of the duty imposed. It says "the supervisors" shall see that poor persons are taken care of as required by law. That clearly indicates that at least a majority must consent to relief being furnished to a pauper at the expense of their town in order to bind it. If one supervisor acts with the knowledge and consent of another, given either expressly or by his keeping silent when good faith requires him to speak, it may properly be inferred that the two concur in the matter and that there is a sufficient meeting of minds between the proper municipal agents and the person furnishing relief to satisfy all the essentials of a contract. While an implied contract is sufficient, as indicated, it must be established, if one endeavors to recover upon it, the same as any other implied contract. The statute creates a liability to relieve destitute persons, but not a liability to individuals who may voluntarily perform that service. It empowers appropriate agents of municipalities to make their liability effective by necessary contracts to that end, and imposes upon such

agents the duty to exercise such power.   If they refuse to do
so, they are doubtless amenable in some way for such mis-
conduct, but the law gives no private person the right to
perform the duty of such officers.   *Otis v. Strafford*, 10 N. H.
352.   Performance of that duty by the person designated
by law is absolutely essential to create a binding obligation
upon the municipality to compensate one for relieving a
poor person, legally entitled to relief at its expense.   If the
statutes on the subject are defective, it is not for the court
to judicially extend them.   They came to us from Massa-
chusetts indirectly, having been adopted by Michigan, then
by this state.   It must be presumed that there was a pur-
pose in making the change which we have pointed out be-
tween the Massachusetts statutes and our own, for, without
the change, mere neglect of the supervisors of a town to
act when they ought to act for the relief of a poor person,
would give a private party, not liable by law to furnish such
relief, and residing in such town, the right to do so at the
expense thereof.   There is no more reason for holding that
a person may aid a pauper, upon the supervisors of the town
in which such pauper has a legal settlement neglecting their
duty, and hold such town liable therefor, than for holding
that one may repair the highways of a town because its
supervisors neglect their duty in that respect, and recover
of such town therefor.   The duty of the municipality in
both cases is regulated by statute, and in neither case can it
be bound to a private person for services rendered except
by contract made as contemplated by law.

From what has been said it follows that the complaint
was insufficient and that the objection to any evidence under
it was proper.   There was not even a suggestion in the com-
plaint that the supervisors of the respondent town had no-
tice of the necessity for furnishing the relief for which the
claim was made.   The application for leave to amend was
properly denied, if for no other reason, because it alleged

mere notice to the chairman of the board of supervisors of the respondent, that Bruaas was a proper town charge and stood in immediate need of relief as such, and that the person giving such notice, the appellant here, was under no legal obligation to furnish such relief. The amendment followed closely the line of decisions to which we have referred, based on express statutes creating a liability under such circumstances. *Smith v. Colerain*, 9 Met. 432.

*By the Court.*— The judgment is affirmed.       ·    .